―――――o―――――

## No. 3749.

### Court of Appeal, Parish of Orleans.

### CHARLES WENAR, vs. JAMES W. KELLEY.

1. Under the evidence in the record the drayman is not a common carrier in the sense that he is an insurer for damage or injury to goods hauled by him, and will not be held to an absolute liability for such damage or injury.

2. As a bailee for hire the burden is upon him to show that he has exercised care and diligence in hauling and handling the goods entrusted to him, and when he has successfully met that burden he will not be held liable for damage or injury to same.

3. Where, in the case of a shipment of glass, it is clearly shown that the glass was delivered by the railroad company in apparent good order to the drayman, who, exercising reasonable care and prudence, delivered the goods in like apparent good order at a desig-

nated place, where, upon being opened, the glass was found damaged or destroyed:

Held:—That the drayman will not be held liable for hidden defects or injuries not attributable to his negligence.

Appeal from Civil District Court, Division "A."

Chas. Rosen, for Plaintiff and Appellant.

P. W. Maloney & Geo. E. Duclaux, for Defendant and Appellee.

ESTOPINAL, J. "This is a suit by the plaintiff against the defendant for the recovery of the sum of Three Hundred and Fourteen and 81/100 Dollars, amount claimed for the value of a shipment of glass to Leo Samson, of this City, for account of plaintiff herein, and which, after delivery, was found to be defective in condition.

From the evidence adduced at the trial of this case, it appears that the defendant, who was then carrying on the drayage business, in this City, was employed by the plaintiff to go to the Illinois Central Railroad warehouse and obtain said shipment of glass. After receiving the box he receipted for the same, which, to all outward appearances, seemed to be in good condition and apparent good order. He subsequently, in accordance with instructions received from the plaintiff herein, delivered one of the boxes to the Leon Schwartz store on Canal street, and, in compliance with further orders, delivered the other two boxes to the New Orleans Carpet & Matting Company in this City."

"Upon returning to the Leon Schwartz store, he was shown the box, which had been opened during his absence by the plaintiff, evidencing the broken condition of the glass."

The above quoted from the defendant's brief, we find to be an absolutely correct statement of the facts in this case.

There was judgment below in favor of the defendant, and the plaintiff has appealed.

Plaintiff predicates his case upon two points.

First. That the defendant being a public drayman, is therefore a common carrier, and as such, is held to an absolute liabil-

ity, or, more properly, is liable as an insurer of the goods.

Second. That if defendant is not a common carrier, he is then a bailee for hire, and that the burden of proof is upon him to show that the loss did not occur through his negligence, or to show that he exercised a degree of care sufficient to rebut the presumption of negligence.

It is useless to dwell at length on the proposition as to whether a public drayman is a common carrier, for under the evidence in this case the drayman is not a common carrier.

Taking up plaintiff's second proposition, that defendant is a bailee, and the burden is on him to show the exercise of proper care or raise a presumption that he was not negligent, we find it necessary to review the testimony found in the record.

It is in evidence that the defendant personally superintended the loading of his dray the shipment of glass for which he had previously receipted from the Illinois Central Railroad Company as being in good order.

The custom in receipting for goods from Railroads, is to give a clean receipt, unless the package shows some outward sign of damage, or, as in the case of glass shipment, when there is a rattling of the contents, in which event the drayman is entitled to an explanation, i.e. may require that the package be opened and examined by the railroad company, before he undertakes to haul it.

The defendant testifies that he did not ask for an examination, because there were no indication of damage from the outside and no rattling from the inside. In this he is corroborated by the railroad clerk, Mr. Mottashed, who further says, "That no man living can take a box of glass and turn it over if any broken pieces, but its bound to rattle." Again in answer to the question put by counsel for plaintiff as to whether there was any necessity to open the box, this railroad clerk answered in the negative saying, "Because the glass didn't rattle and he didn't ask for any examination.

It is in evidence that defendant braced, propped and tied the boxes containing the glass, and that the route taken by the dray was a good smooth one, being along the river front to Canal

street and then up Canal street, which is asphalted, to the point of destination.

Defendant testifies that he followed the dray closely part of the way and preceded it the other part, reaching Schwartz's store where the box was delivered, only a very short time before the dray did. He further says that there was no accident or mishap to the dray, and that the boxes had not been disturbed in transit; that if the box of glass, which is the subject of this litigation, had fallen, that by reason of its great weight, not only the glass, but the box containing it would have broken to pieces.

We do not believe that there can be any doubt but what the result would have been just as the defendant states.

The evidence establishes that the box was carefully unloaded at the Schwartz establishment, and the plaintiff himself testifies that there was no other indication of damage except "the irregular condition of the package," as he puts it.

Therefore, since the rattling of the glass is taken to be the test of the condition of the glass contained in a box, and finding in the instant case that the defendant has been prudent and careful, we are unable to fasten on him the liability for the destruction of glass, which, it is shown, at no time rattled while in his possession.

Plaintiff complains that the driver who hauled the goods was not offered as a witness, urging that this person was peculiarly competent to testify as to the incidents, if there had been any, of the trip from the railroad depot to the Canal street establishment, and intimating that his absence from the witness stand was a suspicious circumstance.

The record does not disclose for what reason the driver was not put on the stand. Defendant may not have been able to procure his attendance at the trial, and from our appreciation of the testimony found in the record we doubt very much that the evidence of this driver would have affected our present conclusion in this matter.

We are satisfied that the brace or board which defendant claims was nailed on this box was not only not the cause of the destruction of the glass,, but that this board was not nailed by

the defendant or his employees, and this conclusion is arrived at from the testimony of the plaintiff himself who says that the nails used "had not quite rusted," showing that the nailing had been recently done. This may appear a very slight circumstance upon which to base any conclusion at all, but it occurs to us that if the nailing had been recent, provided new nails had been used, there should have been no rust on the nails at all. Again, plaintiff says that he observed no nails nor tools in defendant's dray with which the bracing to the box could have been done.

Where and by whom this glass was destroyed we are unable to determine, but the circumstances would indicate that the glass, though cracked, was so packed that it remained intact, and it was only upon the opening of the box and the removal of the packing around it, that it crumbled to pieces.

We are of the opinion that the defendant has met the burden imposed upon him to show that he was not negligent or careless, and cannot be held liable for the loss which has occurred.

We fully concur with our learned brother of the District Court in the brief reasons which he gave for Judgment as follows:

"I think that the plaintiff has failed to show that the case of "glass was broken by defendant's fault. Defendant's receipt" to the railroad company for the case, as in good order, amounts to nothing, in view of the evidence. First, the broker, Mr. Samson, shows that the order for the goods was a hurry-up order. Second, to save freight, the goods were shipped at owner's risk, clear receipt or not. Third, the defendant signed the receipt before the case was delivered to him at a different place; and Fourth, there was no external appearance indicating damage; and Fifth, when the damage was found, plaintiff's first effort was to hold the railroad company responsible.

"It is shown that the glass did not rattle in the case, and that defendant, over a good street, after all precautions to secure the package by braces and ropes, delivered the case at Schwartz's and then carried the other two large cases, all in the same load, to the store on Baronne street, and when he returned the case had been opened by plaintiff and the glass was found broken. It

91

is shown that defendant carefully handled the case and delivered it as he received it. The proof preponderates that the glass was not broken while in defendant's care.

"As a drayman he was not an insurer, and the evidence shows that defendant did all that his undertaking required him to do."

We see not reason to disturb the judgment of the lower Court, and it is hereby affirmed.

Jany. 9, 1906.

## ON REHEARING.

## DISSENTING OPINION.

1. Where a party fails to produce and not assign any reason for a failure to produce important evidence peculiarly within his reach, a presumption arises that the evidence, if produced, would have proved detrimental to such party.

2. A bailor is not in a position to watch the goods exclusively confided to the bailee's care; and such bailor must necessarily be at such bailee's mercy, if the latter may exonerate himself for responsibility for loss, by producing evidence somewhat insufficient in degree and failing to produce better evidence which is obtainable.

DUFOUR, J. With due deference to the majority of the Court, I am unable to concur in their conclusion, for three reasons:

First. That the defendant received the goods and signed a receipt "in apparent good order," and did not avail himself of the right he had under the regulations of the railroad company to have the case opened for inspection. His failure to take this precaution was at his own peril. If the glass did not rattle it must have been unbroken, if it be true that rattling is the inevitable result of a break.

Second. That defendant's testimony is substantially that he went along with the dray is not convincing when he admits that he was at times some distance ahead and at others some distance behind. I do not believe that his course shows any special degree of care and diligence.

Third. That the draymen who drove the dray on the occasion was not produced and his absence is absolutely unexplained in

the record. His testimony would probably have been conclusive if in favor of the defendant, and the rule of law is that a presumption arises against the party who fails to produce evidence peculiarly within his reach.

I fear that the opinion which I do not share may result as a precedent, in making it difficult for a bailor to recover. He is not in any position to watch his goods which are exclusively in the care of the bailee, and he will be at the bailee's mercy if the latter may successfully defend himself with evidence somewhat insufficient in degree, and not the best obtainable.

The jurisprudence of the Supreme Court and of this Court are not in that direction.

I therefore respectfully dissent.

Feb. 5, 1906.

Rehearing refused Feb. 5, 1906.

Writ refused by Supreme Court March 6, 1906.